**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF GEORGIA**
**DUBLIN DIVISION**

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

**TIFFANY CHABOT**
102 Intracoastal Village Court
Myrtle Beach, SC 29588
       Plaintiff,

Civil Action No. 2021 SEP -9 A 9: 19

CLERK
SO. DIST. OF GA.

v.

**MOTEL 6 OPERATING, LP**
       Defendant,
Serve: Corporation Services Corporation
2 Sun Court, Suite 400
Peachtree Corners, GA 30092
R/A for Motel 6 Operating ,LP

**CV321- 53**

**G6 HOSPITALITY LLC**
       Defendant,
Serve: Corporation Services Corporation
2 Sun Court, Suite 400
Peachtree Corners, GA 30092
R/A for G6 Hospitality LLC,

**G6 HOSPITALITY PROPERTY LLC**
       Defendant,
Serve: Corporation Services Corporation
2 Sun Court, Suite 400
Peachtree Corners, GA 30092
R/A for G6 Hospitality Property LLC,

**HWY 441 GROUP, LLC**
Serve: Khalid Javed
3353 Forestwood Drive
Suwanee, Georgia 30024
       Defendant,
**ONITY, INC.**
       Defendant,
Serve: CT Corporation System
289 S. Culver St.
Lawerenceville, GA 30046
R/A for Onity Inc.

**JAYABLE MOTEL, LLC**
2107 US Highway 441 S
Dublin, GA 31021

1

Defendant,

## COMPLAINT

### NATURE OF THE CASE

Now Comes the Plaintiff Tiffany Chabot's complaint against the foregoing parties for injuries she

sustained, the death of her service dog, negligence, the invasion of privacy,  violations under the

American Disability Act and other causes of action.

### PARTIES

Plaintiff, Tiffany Chabot, Pro Se is an individual who resides in the state of South Carolina and who's

mailing address is: 102 Intracoastal Village Court, Myrtle Beach, South Carolina 29588

Defendant, Motel 6 Operating LP is registered in Georgia as a foreign limited liability company,

incorporated in the state of Delaware with its offices located at 4001 International Parkway, Carrollton,

TX 75007 with a registered agent listed as Corporation Service Corporation, 2 Sun Court, Suite 400

Peachtree Corners, GA 30092.

Defendant G6 Hospitality LLC, is registered in Georgia as a foreign limited liability company,

incorporated in the state of Delaware with its offices located at 4001 International Parkway, Carrollton,

TX 75007 with a registered agent listed as Corporation Service Corporation, 2 Sun Court, Suite 400

Peachtree Corners, GA 30092.

Defendant G6 Hospitality Property LLC, is registered in Georgia as a foreign limited liability company,

incorporated in the state of Delaware with its offices located at 4001 International Parkway, Carrollton,

TX 75007 with a registered agent listed as Corporation Service Corporation, 2 Sun Court, Suite 400

Peachtree Corners, GA 30092.

Defendant, Hwy 441 Group, LLC is the business address of the specific Motel 6 in question named in

the lawsuit with the belief of an address and name of the Resident Agent on file as Khalid Javed and a

mailing address of 3353Forestwood Drive, Suwanee, Georgia 30024.

2

Defendant, Onity Inc., is registered in Georgia as a foreign profit corporation company, incorporated in

the state of Delaware with its offices located at 4001 Fairview Industrial Dr. SE, Salem OR 97302 with

a registered agent listed as CT Corporation System, 289 S Culver St., Lawrenceville, GA 30046

Defendant, Jayable Motel, LLC is the business address of the specific Motel 6 in question named in the

lawsuit who is not legally registered with the state of Georgia and with the belief of an address of 2107

US Highway 441 S, Dublin, GA 31021.

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 which gives the

districts court's jurisdiction over all civil actions arising under the Constitution, Laws, and treaties of

the United States.

Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the Plaintiff is a resident of a

different state from the Defendant and the amount of controversy exceeds $ 75,000.00.

Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or

omissions on which the claim is based occurred in Georgia.

### STATEMENT OF FACTS

1.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set

forth herein.

2.   Ms. Chabot was under mandatory evacuation from my home in Myrtle Beach South Carolina due to

hurricane Florence.

3.   In order to keep herself safe as well as her dogs she decided it was best to evacuate under the

mandatory evacuation they were under from the South Carolina government.

4.   Ms. Chabot booked a room online at booking.com for a hotel room at the Motel 6 in Dublin

Georgia because all other motels were full.

5.   A confirmation email was sent to Ms. Chabot.

6.   Ms. Chabot is disabled and asked for a room on the ground level and that she had a service dog

when booking her room.

7. The booking information indicated that the room had a microwave.

8. Ms. Chabot's friend who didn't have anywhere to evacuate because of no vehicle decided to go with Ms. Chabot.

9. They quickly packed up the dogs, the dogs things, thier clothes and food since there was going to be a microwave in the room due to they were going to start shutting down roads and were scared they wouldn't be able to get out.

10. When they arrived at the motel 6 and when Ms. Chabot was given a second floor room.

11. Ms. Chabot explained that she had disabilities and asked why wasn't her room on the bottom floor? She was told that there were none available everything was booked up. She explained she has disabilities and that she had a service dog, but the motel clerk didn't care. She was not going to switch Ms. Chabot out to another room.

12. During the whole stay at the defendants motel there were numerous rooms on the bottom floor that were vacant because there window curtains were open the entire time that the Plaintiff could look in and see.

13. Ms. Chabot made a number of attempts to ask that her room be switched due to her limitations of getting up and down stairs but all request were denied by the motel employees and owner.

14. The Plaintiff also asked to be switched when the ice machine on the top floor was broken and she would have to keep going up and down the stairs to retrieve ice and that there was no microwave in her room; due to the fact she didn't want to leave other than walk her dogs because she had brought her own food, and that also **all those requests for a room accommodation change were denied**.

15. With no other choice I she to take the room. It was extremely hard and painful for her to get up and down the stairs. She was in constant pain with carrying her stuff to the room and having to make different trips walking her dogs, getting ice, forcing her out to go get food, and making the long

4

walk to the office.

16. The distance between the handicap parking in reference to the Plaintiffs room was far and caused great pain to walk that far, walk up and down the stairs carrying her stuff and walking her dogs.

17. Ms. Chabot and her friend stayed mostly in the room with her watching the weather channel updates on the storm and when it would be over so they could travel back home.

18. The first night at the motel since there was no microwave and the only place that delivered was Papa Johns pizza, no other surrounding businesses offered deliver and other third party delivery services were not services that area.

19. Still not be able to cook food because there was no microwave in the room as promised they decided to run across the street to get something to eat and the only delivery service they could find was papa johns in which we had already ordered.

20. Ms. Chabot took each dog out separately as she did prior; a little chihuahua named cooper and her service dog Moochie a boston terrier.

21. As she was walking her boston terrier Moochie, she was stop by a lady and a guy in a silver vehicle and the lady told her that Ms. Chabot had the best and beautiful boston terrier she had ever seen and did Ms. Chabot want to mate him because she has a female boston terrier.

22. Boston terriers have become an expensive and  in high demand breed over the years.

23. They have become one of the most stolen breeds.

24. After walking the dogs they got ready, put the dogs in the room and left to go get something to eat. They were gone about an hour.

25. At dinner they talked about leaving the next morning and heading back home due to the nature of the hurricane wasn't as bad as the news predicted.

26. When Ms. Chabot and her friend arrived back at the motel 6 the door was a jar and moochie her service dog was gone.  The chihuahua; Cooper was found in the bathroom behind the toilet shaking,

even though cooper followed moochie everywhere moochie was gone.

27. They thought he might have been stolen and the police were called and immediately went to the front desk but couldn't get in the building. The doors were locked and nobody was servicing the front desk or the entire motel in fact.

28. Ms. Chabot was an emotional wreck crying and losing her mind. She kept calling and yelling out for her dog. Ms. Chabot was completely devastated.

29. Ms. Chabot took to facebook to she if anybody in the area would come help look for her dog.

30. Ms. Chabot also called her mother to tell her what was transpiring. Ms. Chabot's mother kept calling the motel for a long period of time received with no answer.

31. After the police showed up to take a report and a while later finally reaching someone at the hotel to try to look at the security tapes the person at the hotel said there was noway to look at the security footage until at least the next day because they were understaffed, and the inadequate training didn't know how to work the security system and even if they did they didn't have access to the room that held the security footage.

32. Ms. Chabot went out looking for her dog again crying and yelling his name and the police told her to be quiet that he was most likely stolen and that they would get the tag number and go get him the next day snd if she didn't calm down they were going to take her to jail for disorderly conduct.

33. After the Police left she went back out looking for her dog. She ran into two girls who said he was sitting in the parking lot next door they help her go look for him but he was gone. She kept going and looking everywhere for him yelling and crying.

34. Ms. Chabot looked on facebook for any pages for lost pets and found a number to a guy who also came out and help her look for moochie.

35. Ms. Chabot cried until her face was completely swollen and hardly see. She yelled until she had no voice. She kept walking until she had blisters on her feet to no avail she couldn't find him.

6

36. The lighting at the motel 6 was very scarce and not light very well. The grass was over grown. The maintenance on the property had not been kept up and Ms. Chabot ended up tripping injuring her leg and foot.

37. At that point Ms. Chabot went back to the hotel to see if moochie had returned in which he had not. She couldn't handle the events taking place and went in the bathroom and tried to commit suicide by hanging herself with the shower curtain that was in the bathroom but only to be stopped by her friend.

38. During the time searching for moochie her friends who saw the facebook post started calling the police that they were concerned for her safety and wanted a welfare check on Ms. Chabot.

39. The police came to the motel 6 again were they stated that if Ms. Chabot didn't calm down they were going to take her to the hospital for a mental health evaluation. Ms. Chabot's friend intervened and the police left without taking Ms. Chabot.

40. Ms. Chabot injured and in pain went back out looking for her service dog moochie but still couldn't find him still. She even tried to use cooper to try to find him but to no avail. She looked all through the night until the sun came up.

41. When the sun came up she went back to the motel and called the police again. Ms. Chabot and her friend could see the tapes. While waiting for someone to show up so they could see the tapes she asked her friend to stay there and wait and that she was going out to look for her dog again.

42. Ms. Chabot got in her vehicle and stopped by the car dealership and asked to see if she could see their security tapes. The guy there said sure pay me money; money Ms. Chabot did not have.

43. She continued driving around to the businesses asking for people if they had seen her dog she then stopped by the pound which was behind the motel. They said they hadn't seen him.

44. As Ms. Chabot was driving away she noticed her dog underneath the tree dead. She believe he had been hit by a car.

45. He was covered in blood and red ants, and other insects.

46. She picked moochie up and put him in her car and drove him back to the motel. She got moochie out of the car covered in his blood and being bit by ants and took him up to the room,

47. Ms. Chabot then walked down to meet the officer and told her the dog was dead but she wanted to see it for herself.

48. After talking to the officer the officer went to the office to try to look at the tapes with her friend and Ms. Chabot stayed in the room in utter shock. She just didn't have enough in her to look at the tapes.

49. The officer came back to the room and said the owner/person running the place didn't want the dog there and Ms. Chabot had an hour to do something with it. The officer was sympathetic to Ms. Chabot's lost and stated that the dog must have let himself out of the room.

50. Ms. Chabot was in a strange place don't know anyone or know how to get anywhere and now she's being told to have a dead dog removed like he's a piece of trash.

51. The owner of the motel never said I'm sorry nothing, just straight out told the officer to tell Ms. Chabot to get the dog off the premises.

52. Ms. Chabot spoke to her mother and her mother called around to help find a pet crematory near by and sent Ms. Chabot the number.

53. Ms. Chabot called the pet crematory but it was going to be a couple days before they could cremate moochie.

54. Ms. Chabot and her friend put moochie in the car along with cooper and went to the crematory.

55. Once at the crematory Ms. Chabot clenched her dog knowing this was going to be the last time she would hold and just cried and that her whole world was gone. They had to physically take the dog from Ms. Chabot.

56. She put cooper down by moochie so he could say goodbye and he started puking and throwing up

8

all over the place that even cooper was distraught.

57. After leaving her best friend to be cremated they headed back to the motel.

58. At this point in time Ms. Chabot was in shock and wanted to be left alone from everyone in the world.

59. Soon after arriving back at the motel a there was a knock at their motel door. It was somebody Ms. Chabot knew, that saw her posting on facebook and decided to drive to the motel.

60. Ms. Chabot said she wanted to be left alone and how did she know what room number she was in. Apparently the front desk gave Ms. Chabot's personal information to the person without confirming Ms. Chabot's permission to do so.

61. This was utterly a violation of the motels policy and a direct violation to Ms. Chabot's privacy under federal law.

62. The defendants are known to violate their customers privacy frequently.

63. Ms. Chabot just wanted her dog back and just leave never to return to the hell hole of that motel but had to stay the extra days until she could get her dog back.

64. The plaintiff was forced to stay there at the hotel until the time came to pick up her dog at the crematory. Following the death of her dog. The motel and its employees refused to clean the roof the sheets or provide towels and any housekeeping to her.

65. When the day came to pick up moochie they packed up and Ms. Chabot kept wondering how and why and started inspecting the room on just how the events could have occurred. Ms. Chabot noticed the door jam was broken and also the locking system was deficient and took a video of it before leaving to the office to check out. All of the Defendants knew there had been multiple issues and problems with the locking system and other people, animals and children had been injured and killed due to the locks and security that didn't exist to keep them safe.

66. Ms. Chabot was greeted by the owner who showed no remorse, sympathy or even pay for the

cremation to Ms. Chabot. She had  no explanations for the under staffing, the refusal of reasonable accommodations, atrocious upkeep of the property, the privacy violations,the unspeakable safety concerns to its customers, the inadequate training of the staff or anything else.

67. Ms. Chabot had booked the room but were leaving a day early and asked if the day not used would be refunded the owner explained yes. Till this day that has not happened.

68. Ms. Chabot asked for a copy of the security footage in which was told no.

69. After Ms. Chabot picked up moochie from the crematory they packed up the car put up a memorial for her dog picked him up at the crematory and left and headed home.

70. Once home Ms. Chabot sent certified letters to the motel and the surrounding businesses in order to preserve and security footage and other evidence for legal purposes.

71. Ms. Chabot received a phone call from a Khalid Javed who stated that he was the former owner of the motel but he had sold it prior to this events occurring. He also stated since the time that he sold the motel to the new owners there had been multiple problems at the motel.

72. Mr. Javed is the owner of HWY 441 a defendant named in the lawsuit because there is a question of ownership at the time of the events and may be omitted from the lawsuit if the facts are true, but at the time he was still listed as the owner. Its not know if the business entity of the state did not change in time.

73. Ms. Chabot also received a phone call from the car dealership next to the motel who was very sorry for her lost and would provide those security footage to her.

74. Ms. Chabot did not receive any communication from her letters from the supposedly new owner nor the corporations in this case other than a facebook message with no regard.

75. The death of Ms. Chabots service dog who is under the law a protected class has irreverently ruined and shattered her life.

76. The daily functions of Ms. Chabot has been destroyed in that she has lost friendships, lost her

motivation for life, now has even more severe anger issues, as well as anxiety, panic attacks, and depression.

77. Ms. Chabot has had numerous welfare checks at her house since then because she can't cope of the loss of her dog Moochie all from the defendants action or actions not taken.

78. Ms. Chabot lost her job afterwards due to her mental state of losing her dog, and jobs after the fact.

79. Ms. Chabot has been put of many different types of medications, even had medicines dosages increased over due to the tragic death of her dog which could have been avoided due to the defendants.

80. Ms. Chabot spent years training her dog specifically to her needs. The time, money and effort in training a service dog is extensive and expensive.

81. A person who goes to work shall be compensated for their time. Training a service dog even if its the handler has spent numerous months and years training shall be compensated too.

82. The boston terrier breed has become of of the most expensive and stolen breeds.

83. The time and effort to train a service dog is insane and now Ms. Chabot is forced to try to do it again which Ms. Chabot is not sure she can its too much for her.

84. It's extremely challenging for her to go out. People always asking hey where is your small dog your always with, which makes Ms. Chabot start crying uncontrollable and have to try to explain what had happened to him.

85. Ms. Chabot has days were she can't function and cries uncontrollable because she can't deal with the day to day functions other people take for granted.

86. Ms. Chabot is not the only victim of the defendants. Other people, kids, and animals have been either killed, hurt, or robbed due to the defendant's.

87. Ms. Chabot is entitled to the money and time spent on her service dog Moochie for the years she spent training him.

11

88. Ms. Chabot is entitled to money and time for her new service dog.

89. Ms. Chabot is entitled for the pain and suffering of the defendant's actions as well for their

    negligence and their violations of the ADA, Consumer protection and privacy acts.

90. Defendants mentioned as "Motel Operators" shall refer to as the group consisting of Motel 6

    Operating LP, G6 Hospitality LLC, G6 Hospitality Property LLC, HWY 441 Group, and Jayable

    Motel LLC.

**COUNT 1**
**VIOLATIONS OF TITLE III OF THEAMERICANS WITH DISABILITIES ACT**
**(ALL DEFENDANTS)**

91. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set

    forth herein.

92. On or about July 26, 1990, Congress enacted the American with Disabilities Act ("the ADA"), 42

    U.S.C. §1281 et seq. Commercially establishments were provided one and half years from the

    enactment of the ADA to comply with the law and regulations promulgated pursuant thereto. The

    effective date of Title III of the ADA is January 26, 1992.

93. Pursuant to the mandates of 42 U.S.C. §1214(a), the Department of Justice has promulgated federal

    regulations in order to implement the requirements of the ADA.

94. Pursuant to 42 U.S.C. §1218(7) and 28 C.F.R. §36.104, the subject facility is a place of public

    accommodation is that the defendants operates a hotel/motel which provides lodging, and all the

    related services, to the public.

95. As a result of the enactment of the ADA, and the subsequent implementation of it's requirements,

    Defendant's acts and omissions as alleged herein are intentional violations of Title III of the ADA

    and are ongoing and intentional acts of discrimination against the Plaintiff.

96. The building or subject facility at issue in this action is a public accommodation subject to the

    ADA, and it must be in compliance therewith.

97. Defendant's have discriminated, and continued to discriminate, against the Plaintiff and other disabled persons, by denying full and equal access to, and full equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations at its facilities in derogation of 42 U.S.C. §1218 et seq., and as prohibited by 42 U.S.C. §1218 et seq., by failing to make the property accessible and achievable with persons with disabilities.

98. Plaintiff alleges that there was and still exists a genuine threat of imminent future injury to the Plaintiff and other similarly disabled persons.

99. Defendant's facility is in violation of U.S.C. 42 U.S.C. §1218 et seq., and, consequently, Plaintiff was denied as a result of the following specific violations:

a) Defendant's has failed to provide adequately compliant parking spaces within the parking lot which meet the requirements of accessible parking under the ADA.

b) Defendants has failed to provide a clear and unobstructed designated accessible path of travel from access isles of the existing parking spots, marked as such, designated for wheelchair users to enter the subject facility.

c) Defendant have failed to provided adequate curb ramps protection at the existing curb ramps to discourage obstruction from parked vehicles.

d) Defendant's has failed to provide adequate curb a level landing that is at least 36 inches long at the top of the existing curb ramp.

e) The existing curb ramp at the facility entrance fails to comply with the designated allowances for curb ramp flares.

f) Defendant's has failed to provide adequate ADA-compliant directional and adequate informational signage within the subject facility.

g) Defendant's has failed to construct and/or modify restrooms for the accessibility.

h) Defendant's failed to also make reasonable accommodations to the Plaintiff and her service dog.

13

100. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants and one or more or all said herein above stated acts were the proximate cause of those injuries, death, and damages sustained by Plaintiff.

**COUNT 2**
**NEGLIGENCE**
**(ALL DEFENDANTS)**

101. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

102. Defendants had actual knowledge of how defective and hazardous the condition(s) existing on their premises through the direct knowledge of their employees and agents.

103. Defendants were negligent per se.

104. The defendants all knew about the lock issues and did nothing to secure a better way to keep their customers and animals safe.

105. Defendants were negligent and said negligence was proximate cause the Plaintiff's injuries in the following ways, to wit.

a) Violation of O.C.G.A § 51-3-1 by failing to use ordinary care to keep the premises safe;

b) Violation of state and county building codes or industry standards;

c) In failing to to properly inspect and maintain the premises.

d) In failing to warn of latent dangers on the premises.

e) In failing to post warning signs or warning markings

f) In knowingly allowing invitees to utilize unsafe areas on the premises.

g) In failing to properly train and supervise their employees in regard to the care of the said property and;

h) In negligently retaining, entrusting, hiring, and supervising said employees.

I) failure to maintain and produce a lock system to keeping their customers, belongings and animals

14

safe.

106. Although Defendants knew, or in the reasonable diligence should have known, of the risks of injuries to their invites from said hazardous condition(s) existing in their premises, Defendants negligently failed to take reasonable precautions to guard the dangerous condition(s) and failed to protect their invitees, and service animals from such condition(s), including the Plaintiff and her service dog Moochie.

107. Defendants negligently maintained said premises and at all times herein mentioned failed and neglected to correct, mark, remove or repair the premises or to guard against injuries to their invitees, the Plaintiff and her service animal, although said condition had existed for such a length of time that Defendants, their agents, employees, officers, servants knew or should have known thereof and the likelihood of injury or death to persons or their animals at said location.

108. Defendants "motel operators" and Onity knew the locks on the door were outdated, broken and where not competent to keep people, kids, and animals safe from injury or death.

109. Defendants Onity knew that their locks were faulty but sold those locks knowing that the locks were faulty and could cause death and injury.

110. Defendants "Motel Operators" knowingly bought and installed the Onity locks knowing that they could cause injury and death.

111. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants and one or more or all said herein above stated acts were the proximate cause of those injuries, death, and damages sustained by Plaintiff.

### COUNT_3
### NEGLIGENCE AND RECKLESS SECURITY RESULTING IN INJURY AND DEATH
### (ALL DEFENDANTS)

112. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

113. The Defendants had a duty to protect Ms. Chabot and her pets from any foreseeable dangers, threats to their safety.

114. Defendants knew that the Motel in Dublin had high rates of criminal activity and the lock system and was poorly maintained/broken as well as the building.

115. The Defendants also knew that they were understaffed and the security system was not maintained nor a security officer to secure the building from any foreseeable dangers and threats to their safety.

116. Despite the dangers to its guests did nothing to procure measures so events like what happened to Ms. Chabot would have not happened. Defendant's negligently, recklessly, intentionally refused to implement security measures, fix the property and lock system, and adequate trained staffing that would have prevented this causing serve injury and death to Ms. Chabot, including but not limited to:

a) Choosing to have round-the-clock, real-time staffing monitoring of security camera footage that could be accessed in event of cases like this or worse.

b) Refusing to provide sufficient security personnel and staffing in light of the crime rate at the motel.

c) Refusing to fix or replace locks that do not work and are broken that allowed this occurrence to occur that lead Ms. Chabot's injuries and the death of her service dog.

d) Failing to have proper amount of staffing on duty and inadequate training.

117. Defendant's are directly liable for their failure to hire, train, supervise,competent staff and security  guards to provide security at the motel.

118. Defendant knew  they had problems with their faulty locks and did nothing to procure or engineer replace or fix the locks.

119. Defendants knew once a person leaves their room that there is not extra security measures like

inside the door at the top.

120. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants and one or more or all said herein above stated acts were the proximate cause of those injuries, death, and damages sustained by Plaintiff.

### COUNT_4
### NEGLIGENCE INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

121. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

123. The Plaintiff had a strong bond with her two dogs.

122. The Plaintiffs animals were more than companions, one Moochie was a service dog, whom the Plaintiff relied on a daily basis.

123. Tiffany Chabot suffered the sudden death of her dog, her life line to the outside world, when her dog went missing and later found dead, in which Ms. Chabot had to carry her dog back covered in her dogs blood, to which was then kicked out of her motel room.

124. The events have caused mental anguish, and severe of emotional distress has plagued the Plaintiff and continues daily in her life.

125. Given the abrupt and violent circumstances of which her dog went missing and later found dead covered in blood and insects the images have ultimately ruined Ms. Chabots life forever.

126. From the not knowing where he was, to looking for him in a strange environment with not a care in the world nor help from the defendants, to having to carry and be submerged in his blood and insects with injuries to herself from the poorly maintained property have changed Ms. Chabot's life forever. The severe distress, grief, and sorrow are beyond grief in which normally attends a death or injury to someone or someones pet or service dog.

127. Since Defendants acts and omissions directly and proximately caused Ms. Chabot's injuries and

17

the death of her service dog Moochie to suffer unfathomable emotional strain and pain. Defendants are liable for the resulting damages.

128. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants and one or more or all said herein above stated acts were the proximate cause of those injuries, death, and damages sustained by Plaintiff.

**COUNT_5**
**UNFAIR TRADE PRACTICES ACT VIOLATIONS**
**(MOTEL OPERATORS AND EMPLOYEES)**

129. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

130. Defendant's Motel 6 represented to the public that it possessed as a safe overnight accommodations suitable for entire families and their pets and engaged in target marketing online including Bookings.com.

131. Despite these representations, the Defendants knew it had high rates of crimes that threatened guests and pets safety and inadequate security systems, lack of staffing, and building code violations to protect guests and their pets, yet intentionally regarded these issues, and refused to implement necessary security measures and fix the property in order to generate greater and greater profits.

132. Defendants knowingly, willfully, and intentional misrepresentations of the safety and quality of its accommodations are in direct violation of the Georgia Unfair Trade Practices Act, O.C.G.A §§10-1-372 through 10-1-375. These misrepresentations include, but not limited to:

a) representing that its services had characteristics that they did not have.

b) representing that its services were of particular standard, quality, or grade when they were not of such quality or grade.

c) failing to provide the quality of services contracted for the Plaintiff Tiffany Chabot and her pets.

18

d) generating a gross disparity between the value received by the Plaintiff Tiffany Chabot and her

pets.

133. These actions and omissions were a direct and proximate cause of these injuries, Defendants are

liable to the Plaintiff for damages described in her complaint, in addition to this count for damages

specifically permitted under the Georgia Unfair Trade Practices Act, O.C.G.A §§10-1-372 through

10-1-375 including damages, treble damages, punitive damages, attorney fees and costs.

134. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of

the Defendants and one or more or all said herein above stated acts were the proximate cause of

those injuries, death, and damages sustained by Plaintiff.

**COUNT_6**
**CONSUMER PROTECTION ACT AND PRIVATE PRIVACY VIOLATIONS**
**(MOTEL OPERATORS AND EMPLOYEES)**

135. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set

forth herein.

136. Motel 6 and their operators notorious for violating peoples privacy and known for there consumer

protection act violations also.

137. Motel 6 guests in Georgia also have a common law right to the privacy of their guest registry

information.

138. In Georgia motel guest registry information constitutes a private affair protected from disclosure

without probable cause.

139. Motel 6 guests in Georgia have a reasonable expectation of privacy that their guest registry

information will not be disclosed without probable cause.

140. Motel 6's privacy policy, as set forth on its website (http://www.motel6.com/en/faq.html) states

that Motel 6 is "committed to safeguarding the privacy of the personal information that we gather."

The policy also states "From time to time, we may disclose your personal information. We will

always endeavor to make that disclosure in accordance with applicable law."

141. Unfair or deception acts or practices in the conduct of any trade or commerce are unlawful under the Consumer Protection Act.

142. Motel 6 committed unfair acts and practices in the conduct of trade or commerce in violating its guests rights to privacy.

143. Motel 6 actions of disclosing its guests private information in violation of its guests right to privacy are not and were not reasonable in relation to the development and preservation of business and are inconsistent with public interest.

144. The Plaintiff under Georgia statues § 10-1-397(a)(2)(A), §10-1-397(a)(2)(c), §10-1-397(a)(2)(B) is entitled relief, restitution, and remedies of the civil penalty violations.

145. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants and one or more or all said herein above stated acts were the proximate cause of those injuries, death, and damages sustained by Plaintiff.

## DAMAGES

Plaintiff is entitled to recover for the injuries and pain and suffering sustained, and all other elements of damages allowed under Georgia law, including but not limited to all compensatory, general, special, incidental consequential, punitive and other damages permitted. Plaintiff states  her intention to seek all compensatory, general, special, incidental consequential, punitive and other damages permissible under Georgia law, including, but not limited to the following which were proximately caused by Defendants negligence.

a) Personal injuries;

b) Past, present, and future lost wages;

c) Past, present, and future pain and suffering;

d) Past, present, and future medical expenses;

e) Permanent injuries;

f) Disability and disfigurement;

g) Mental anguish and emotional distress;

h) Loss of the capacity for the enjoyment of life;

i) Impaired ability to labor;

j) Incidental expenses;

k) Consequential damages to be proven at trial; and

l) All items of damages recoverable under Georgia Law

## PUNITIVE DAMAGES

Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

Plaintiff is entitled to an award of punitive damages, without limitations or cap, because the actions of Defendants and their agents and employees were willful and wanton and showed an entire want of care, which would raise the presumption of conscious indifference to consequences and/or a specific intent to cause harm.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

Plaintiff incorporates the preceding paragraphs by reference herein.

WHEREFORE, Plaintiff seeks the following relief:

Actual and compensatory damages sufficient to make him whole.

Punitive damages against Defendants sufficient to punish them and to deter further wrongdoing;

Treble damages;

Attorneys' fees as they arise, litigation expenses, costs, pre- and post-judgment interest as provided by law;

Such other and further relief as the Court deems just and proper.

The Plaintiff seeks the amount of damages to exceed 1,000,000.00

Respectfully Submitted

Tiffany Chabot

102 Intracoastal Village Court

Myrtle Beach, South Carolina 29588

843-909-6394

tiffanychabot28@gmail.com

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Tiffany Chabot | Motel 6 Operating LP, ET AL |

| (b) County of Residence of First Listed Plaintiff | Horry, South Carolina | County of Residence of First Listed Defendant | Carrollton, Texas |
|---|---|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES.)* | | *(IN U.S. PLAINTIFF CASES ONLY)* | |
| | | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. | |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| 102 Intracoastal Village Court, Myrtle Beach, S.C. 29588 | 4001 International Parkway, Carrollton, Texas 75007 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☒ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
see attached complaint

Brief description of cause:
see attached complaint

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE 8/27/21

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____